[Crim. No. 5595.   Second Dist., Div. Three.   Aug. 21, 1956.]

THE PEOPLE, Respondent, v. ELMER STEVEN SMITH, Appellant.

Gladys Towles Root for Appellant.

Edmund G. Brown, Attorney General, and Joan D. Gross, Deputy Attorney General, for Respondent.

SHINN, P. J.—Defendant was convicted of the crime of forcible rape (Pen. Code, § 261, subd. 3), and appeals from the judgment and order denying him a new trial.  The cause was submitted on the preliminary transcript with each side reserving the right to put on additional evidence.  Defendant urges as a ground for reversal the insufficiency and inherent improbability of the evidence.

The prosecutrix, a 24-year-old housewife weighing 90 pounds, testified as follows: She went to bed at about 2:25 a. m. on the morning of August 6, 1955, shortly after the departure of some guests who had visited her at the apartment

she occupied with her three children and her husband, who was not then at home. Soon after, she was awakened by defendant who was in her bedroom. When he started to grab her she screamed and pleaded with defendant but he forcibly engaged in an act of sexual intercourse with her against her will. She remained in bed until he left and then went to the apartment of her neighbors, the Hansens. As a result of the encounter she suffered shock and had marks on her throat and a scratch over her eye. She identified a cigarette lighter and a tie clasp (which defendant had been wearing earlier in the evening) as having been found on the bed by her husband after the incident. On cross-examination she denied that she had previously had sexual intercourse with defendant, denied that she had ever discussed with defendant his ability to have children, but admitted that about 8 p. m. on the evening of August 5th defendant had picked her up in his arms and hugged her.

Bollinger, the operator of the motel where the prosecutrix lived, testified that defendant also lived in an apartment on the premises. Sometime after 2 a. m. on the morning of August 6th, he (the witness) heard a woman scream twice. After a telephone call from Mrs. Hansen he went outside and saw defendant leave the prosecutrix' apartment fully dressed but with his tie pulled to one side. He asked defendant what was happening and defendant said "My God, what is she trying to do to me?" He then saw the prosecutrix come out of her apartment and go to the Hansen's apartment. He saw her at the Hansen's. She was crying and appeared to be holding her throat.

Hansen, who lived in the apartment next to the prosecutrix and her family, testified that shortly after 2:15 a. m. he heard two loud screams. He then heard crying and heard the prosecutrix saying "Steve, please let me alone, Steve. You are hurting me." He telephoned Bollinger and while he, Mrs. Hansen and Bollinger were standing on the front drive of the motel debating what to do, defendant left the prosecutrix' apartment and the prosecutrix came out shortly thereafter. She was crying. She had a red abrasion on her throat. Mrs. Hansen testified to the same effect.

Defendant testified that he saw the prosecutrix at about 8 p. m. on August 5th, that she complimented him on his appearance, that he, Mrs. Hansen and the prosecutrix walked out together, that he and the prosecutrix started hugging each other in Mrs. Hansen's presence, and that he picked up the

prosecutrix and carried her up the back porch stairs, setting her down at her request. When he asked her if he could come in she said that her husband was due home for dinner soon and asked him if he could return at about 11:30 p. m. He said he couldn't, but at about 2 a. m. he went to the prosecutrix' apartment and she invited him into the bedroom. There they began an act of sexual intercourse with her consent, but while they were so engaged she asked him to stop and put on a contraceptive device which he refused to do. She then became hysterical and screamed twice, struggling to escape defendant's embrace. This caused defendant to desist and he left the apartment after about 15 minutes of conversation with the prosecutrix. He testified that he had had sexual intercourse with her on a number of previous occasions and that several weeks prior to August 6th she had become furious with him when he told her and Mrs. Hansen that he was not "fixed" and could have children. Mrs. Hansen testified that when the prosecutrix came into her apartment after the incident she asked Mrs. Hansen several times whether defendant was sterile. She remembered a conversation which took place several weeks before August 6th during which defendant and the prosecutrix discussed whether he was sterile. Prosecutrix denied having had such a conversation.

■ Defendant's contention with respect to the insufficiency of the evidence is without merit. The testimony of the prosecutrix, the evidence of her screams and the marks on her throat support implied findings that force was used by defendant and that the prosecutrix resisted him to the extent which the law requires in such affairs. Defendant admitted continuing an act of intercourse with the prosecutrix despite her protests. His testimony that he had engaged in previous acts of intercourse with her and her reason for her belated resistance merely served to raise a conflict in the evidence as to whether the act in question was consented to by the prosecutrix. That conflict was resolved against defendant by the trial court and on the appeal we are bound by its determination as to the credibility of the parties. We do not find the prosecutrix' story to be of no probative value. The court did not abuse its discretion in denying defendant a new trial.

The judgment and order are affirmed.

Wood (Parker), J., and Vallée, J., concurred.